# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 147

OCTOBER TERM, A.D. 2020

December 7, 2020

DUSTIN ARTHUR COX,

Appellant
(Defendant),

v.

S-20-0102

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Donovan Burton, Student Intern.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    After a bench trial, Dustin Cox was convicted of one count of sexual abuse of a minor in the second degree.  He claims the district court erred when it admitted prior bad acts evidence without holding the required W.R.E. 404(b) pretrial hearing.  We find no reversible error and affirm.

## *ISSUE*

[¶2]    Was the admission of W.R.E. 404(b) evidence prejudicial error?

## *FACTS*

[¶3]    In the spring of 2018, 14-year-old MF lived in Gillette, Wyoming, with her parents and one of her siblings.  Around this time, MF became close friends with a classmate, MM, who was also 14.  MM lived with her parents and 26-year-old brother, Dustin Cox.  Mr. Cox slept in the basement, and the bedrooms for the other family members were located on the third floor.  MF began spending significant time at MM's home, sometimes staying overnight several days in a row.

[¶4]    Initially, when MF stayed at MM's house, MF and Mr. Cox interacted in ordinary ways.  MF, MM, and Mr. Cox would spend time in the basement playing video games and watching television.  Mr. Cox taught MF to draw.  As time went on, Mr. Cox began texting MF.  Some of these texts contained sexual innuendo.  By July 2018, the interactions between MF and Mr. Cox included physical contact.  Mr. Cox would "flirt" with MF by "snapping her in the butt with a towel."  On one or two occasions, MF sat on Mr. Cox's lap.  Once, Mr. Cox allowed MF and MM to draw a tattoo on his lower back.

[¶5]    Toward midsummer, MF went to the basement without MM.  Mr. Cox was seated on the couch naked, but for a blanket.  MF stated she thought Mr. Cox had been drinking because he was acting "loopy," and this was not the first time she had seen him intoxicated.  Mr. Cox asked MF for oral sex.  MF initially refused but Mr. Cox continued to ask.  According to MF:

> And so I went over there.  He -- he put his -- his hands above
> his head and pushed the blanket that he had covering himself
> down, and he had asked me to perform oral sex, which I did.

After Mr. Cox ejaculated, MF returned upstairs where she told MM she performed oral sex on Mr. Cox.

[¶6]    MF later told her sister what had happened.  Her sister told their father, who alerted law enforcement.  Law enforcement opened an investigation.

1

[¶7]    Officer Christine Winterholler, with the Gillette Police Department, interviewed MF.  MF confirmed that she had performed oral sex on Mr. Cox in the basement before going upstairs to rejoin MM.  Officer Winterholler also interviewed Mr. Cox.  Mr. Cox told her he viewed himself as "a big brother figure" to MF.  He claimed that over time, MF began following him around, and it became obvious that she had a "crush" on him. Confronted with the oral sex allegation, Mr. Cox said, "Whoa!  Whoa, that's over the top, don't you think?"  He offered that MF made the allegation "just . . . out of spite, maybe." Mr. Cox acknowledged texting with MF.  When officers searched his phone, any messages with MF had been erased.  Some messages with Mr. Cox had also been erased from MF's phone.

[¶8]    Following the investigation, the State charged Mr. Cox with one count of sexual abuse of a minor in the second degree based on the oral sex allegation.  The matter was set for a bench trial.  Prior to trial, Mr. Cox filed a demand of notice of W.R.E. 404(b) evidence.  The State did not respond.  In its witness list, the State noted that MF would testify to all relevant facts within her knowledge.

[¶9]    At trial, MF testified that Mr. Cox had asked her to perform oral sex on him and she complied.  She also affirmed that when she went back upstairs the same night, she told MM what had transpired.  An exhibit was introduced containing a Facebook conversation between MF and MM's boyfriend, Mitch, where MF and Mitch discussed the oral sex incident.  MF testified that Mitch learned of the incident from MM.

[¶10] MM testified that, on the night of the oral sex incident, MF told her she had performed oral sex on Mr. Cox.  MM stated that she did not believe MF.  MM believed that MF was "jealous" of MM's relationship with an older man and wanted to develop a relationship with Mr. Cox.

[¶11] Mr. Cox testified in his own defense.  He acknowledged texting with MF that summer.  He testified he had been alone with her in the basement on multiple occasions. He denied asking MF for oral sex or receiving oral sex from her.

[¶12] The 404(b) evidence at issue here is MF's testimony about an earlier occasion when she, MM, and Mr. Cox were wrestling.  She stated, "I remember [Mr. Cox] putting his hand down my pants and fingering me."  Defense counsel later called MM, who testified she was present for the wrestling incident but did not observe Mr. Cox inappropriately touch MF or put his hands under her clothing.  Mr. Cox testified that he never grabbed MF's butt, groped her vagina, or attempted to put his hand under her clothing during or after the wrestling incident.

[¶13] After deliberation, the district court found Mr. Cox guilty.  The district court imposed a sentence of two and one-half to seven years.  Mr. Cox appealed, claiming the

State introduced improper 404(b) evidence by eliciting testimony of the wrestling incident.

## *DISCUSSION*

[¶14]  Mr. Cox claims MF's testimony regarding the wrestling incident was evidence of prior bad acts subject to W.R.E. 404(b); therefore, the admission of the evidence without a *Gleason* analysis was error and prejudiced him.  *See Gleason v. State*, 2002 WY 161, 57 P.3d 332 (Wyo. 2002).[1]

### A.  Standard of Review

[¶15]  "We review decisions on the admissibility of 404(b) evidence in two parts; first for abuse of discretion, assuming the court performed some sort of analysis under the *Gleason* framework."  *Mitchell v. State*, 2020 WY 142, ¶ 20, 476 P.3d 224, 232 (Wyo. 2020) (citing *Blanchard v. State*, 2020 WY 97, ¶ 19, 468 P.3d 685, 691 (Wyo. 2020)). "Second, if we find error, or if the first prong is unreviewable because no analysis occurred, our inquiry turns to whether the admission was prejudicial."  *Mitchell*, ¶ 20, 476 P.3d at 232 (citing *Blanchard*, ¶ 19, 468 P.3d at 692 (citing *Broberg v. State*, 2018 WY 113, ¶ 19, 428 P.3d 167, 172 (Wyo. 2018))).  When no *Gleason* analysis is performed, the district court has had "no opportunity to exercise its discretion, and we cannot review for an abuse of discretion."  *Blanchard*, ¶¶ 19–20, 468 P.3d at 691–92; *LaJeunesse v. State*, 2020 WY 29, ¶ 12, 458 P.3d 1213, 1218 (Wyo. 2020) (The "[evidentiary] analysis is intended to be conducted by the trial court, and we do not apply it anew on appeal." (quoting *Mayhew v. State*, 2019 WY 38, ¶ 27, 438 P.3d 617, 624 (Wyo. 2019))).

[¶16]  Error is prejudicial when "there is a reasonable probability that the result would have been more favorable to the defendant had the error not occurred."  *Larkins v. State*, 2018 WY 122, ¶ 94, 429 P.3d 28, 49–50 (Wyo. 2018).  "Prejudicial error requires reversal, while harmless error does not."  *Payseno v. State*, 2014 WY 108, ¶ 20, 332 P.3d

---

[1] The admissibility of 404(b) evidence is determined after an evidentiary hearing applying the *Gleason* factors:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Birch v. State*, 2018 WY 73, ¶ 19, 421 P.3d 528, 535 (Wyo. 2018) (quoting *Gleason*, ¶ 18, 57 P.3d at 340); *Putnam v. State*, 2020 WY 133, ¶ 31, 474 P.3d 613, 622 (Wyo. 2020).

1176, 1182 (Wyo. 2014) (quoting *Nelson v. State*, 2010 WY 159, ¶ 29, 245 P.3d 282, 289 (Wyo. 2010)).

## B.     Analysis

[¶17] Mr. Cox contends without the 404(b) evidence the verdict would have been more favorable to him. The State responds the testimony concerning the wrestling incident was not 404(b) evidence but instead created a duplicity defect in the charge against Mr. Cox. In the alternative, it contends if the testimony was 404(b) evidence, it did not prejudice Mr. Cox.

[¶18] At trial, the State questioned MF about the wrestling incident. The following evidence was admitted.

> Q. Okay. How did that activity start?
>
> A. It -- it started as just wrestling. Everyone was pushing each other. We were shoving each other down, and at some point it just went a different direction.
>
> Q. So you said that started out just wrestling, everyone was sort of participating?
>
> A. Yes.
>
> Q. When you say "everyone," who do you mean?
>
> A. I mean [Mr. Cox], M.M. and I.
>
> Q. And where was this wrestling taking place?
>
> A. Downstairs.
>
> Q. In [Mr. Cox's] basement area?
>
> A. Yes.
>
> Q. And you say it took a different direction. What did you mean by that?
>
> A. At one point [Mr. Cox] had just groped my vagina, and while we were wrestling, I -- I didn't push away. And then we continued to wrestle, and, eventually, we had all started to

4

> stop.  And I -- I don't know what I did, but I remember [Mr. Cox] putting his hand down my pants and fingering me.

Mr. Cox's counsel raised no objection to this testimony.

### 1.  There Was No Duplicity Defect in the Charge Against Mr. Cox

[¶19]  "Duplicity is the charging of separate offenses in a single count."  Wayne R. LaFave et al., *Criminal Procedure* § 19.3(d), at 336 (4th ed. 2015); *Triplett v. State*, 2017 WY 148, ¶¶ 13–14, 406 P.3d 1257, 1260 (Wyo. 2017); *Schuler v. State*, 2008 WY 47, ¶ 22, 181 P.3d 929, 934 (Wyo. 2008) (waiver).  "Duplicity 'present[s] a danger that the jury may convict a defendant although not reaching a unanimous agreement on precisely which charge is the basis for the conviction' in violation of '[t]he Sixth Amendment guarantee . . .  to a unanimous jury verdict[.]'"  *Triplett*, ¶ 13, 406 P.3d at 1260 (quoting *United States v. Washington*, 653 F.3d 1251, 1262 (10th Cir. 2011)).  Because duplicitous indictments fail to give adequate notice of the specific charge and pose the risk of a non-unanimous jury verdict, "Wyoming has long prohibited duplicity in charging."  *Triplett*, ¶ 14, 406 P.3d at 1260.  Here, there is no confusion or ambiguity regarding the underlying basis for Mr. Cox's charge and conviction.  The Felony Information and Affidavit of Probable Cause establish the charge was based on MF's allegation that she "performed oral sex" on Mr. Cox.  Evidence of the wrestling incident did not render the Felony Information duplicitous.

### 2.  Testimony Regarding the Wrestling Incident Implicated W.R.E. 404(b)

[¶20]  Wyoming Rule of Evidence 404(b) governs the admissibility of "bad acts evidence."

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

W.R.E. 404(b).  Evidence falling within the scope of 404(b) "may include, but is not limited to, any conduct which may bear adversely on the jury's judgment of the character of a person, and it is not limited to other crimes."  *Putnam v. State*, 2020 WY 133, ¶ 30, 474 P.3d 613, 622 (Wyo. 2020).

[¶21] The wrestling incident is uncharged sexual contact and falls squarely within the scope of W.R.E. 404(b). *See, e.g.*, *Broberg*, ¶¶ 14, 19, 428 P.3d at 170–72 (testimony of digital penetration fell within the purview of W.R.E. 404(b) and was erroneously admitted, without the required *Gleason* analysis). Mr. Cox filed a pretrial demand for 404(b) evidence, and the State did not respond. Under these circumstances, a potential 404(b) issue at trial cannot be anticipated by the defendant, much less the court. *See Mitchell*, ¶ 21, 476 P.3d at 232 (citing *Blanchard*, ¶¶ 19–20, 468 P.3d at 691–92). Consequently, unless the defendant immediately recognizes the evidence as subject to 404(b) and raises another objection, there can be no exercise of discretion for us to review. *Mitchell*, ¶ 21, 476 P.3d at 232. On appeal, the only question that remains is whether the evidence prejudiced Mr. Cox. *See Putnam*, ¶¶ 30–31, 474 P.3d at 622.

### 3. The Admission of the 404(b) Testimony Did Not Prejudice Mr. Cox

[¶22] The admission of MF's testimony relating to the wrestling incident was harmless. W.R.A.P. 9.04. The State presented sufficient evidence, absent the wrestling incident, for the district court to conclude that Mr. Cox sexually abused MF. *Birch v. State*, 2018 WY 73, ¶ 23, 421 P.3d 528, 536 (Wyo. 2018) (finding satisfactory evidence of defendant's guilt rendered error in admitting 404(b) evidence harmless); *Lindstrom v. State*, 2015 WY 28, ¶ 23, 343 P.3d 792, 798 (Wyo. 2015) (same).

[¶23] Mr. Cox's case was tried as a bench trial. "The concerns raised by admission of other misconduct evidence are less critical in a bench trial than in a trial to a jury." *Barker v. State*, 2006 WY 104, ¶ 38, 141 P.3d 106, 118 (Wyo. 2006). Where a jury is more likely to be impacted by bad acts evidence, "[a] trial judge is learned in the law and understands the need to convict a defendant of the charged crime rather than on the basis of a general belief the defendant has a criminally-oriented disposition." *Barker*, ¶ 38, 141 P.3d at 118 (citing *United States v. Turner*, 799 F.2d 627 (10th Cir. 1986); *United States v. Hassanzadeh*, 271 F.3d 574, 578 (4th Cir. 2001)).[2]

[¶24] The district court made detailed findings in support of its verdict with no mention of the wrestling incident:

---

[2] This is not to say that the State's **duty** to respond to a notice of demand is lessened or excused in bench trial proceedings. *Barker*, ¶ 35, 141 P.3d at 117 (when a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), "[t]he State **must** then respond with sufficient information to meet the balance of our four-part [*Gleason*] test for determining the admissibility of other bad acts evidence" (emphasis added) (citing *Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo. 2002))). *See also Mitchell*, ¶¶ 25, 27–28, 476 P.3d at 234–35 ("Prosecutors should err on the side of providing pretrial notice, lest future failures to do so are appealed as prosecutorial misconduct.").

The real issue is who I believe on Element No. 5. Do I believe the victim, or do I believe the defendant? They both took the stand. I evaluated both pieces of testimony independently and made a credibility determination that I believe the victim in this case, M.F. . . .

. . . Both of the key witnesses had inconsistencies that indicate that they were either not truthful or did not recall the facts correctly.

. . . [W]hat was most critical in my analysis was that M.M. . . . testified that M.F. came up and told her this story right when it happened and a little different version of the details. But then the text messages in Exhibit 2 were consistent with that: I heard the story. Where did you hear the story from? From M.M.

All of that fits together and fits a timeline, and those messages are from the 11th of August, long before anyone on M.F.'s side of the ledger knew about this, long before law enforcement knew about it, and that, to me, tells the most accurate story; that it happened; M.F. told M.M. about it; M.M. told her paramour about it.

[¶25] MF testified that Mr. Cox had her perform oral sex, and the district court found this testimony credible. MF told MM about the incident on the night that it happened, and this account was largely consistent with what she later disclosed to others. The district court did not rely on the wrestling incident evidence in reaching its verdict. *See Barker*, ¶ 38, 141 P.3d at 118. We find no reasonable probability that the verdict against Mr. Cox would have been more favorable had the wrestling incident evidence not been admitted. *Lindstrom*, ¶ 23, 343 P.3d at 798. Consequently, Mr. Cox was not prejudiced.

## *CONCLUSION*

[¶26] The admission of 404(b) evidence was not prejudicial error.

[¶27] Affirmed.