**2025 IL 130127**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130127)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
CECIL SMART, Appellee.

*Opinion filed June 5, 2025.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, and Rochford concurred in the judgment and opinion.

Justice O'Brien dissented, with opinion, joined by Justice Cunningham.

## OPINION

¶ 1    This case presents an evidentiary question: when a defendant denies the commission of a charged crime and does not present any evidence or argument that his acts were accidental, incidental, or inadvertent, may the State introduce evidence of other misconduct to prove intent? The Cook County circuit court

permitted the State to introduce evidence of prior uncharged acts of misconduct to prove that the defendant, Cecil Smart, intended his contact with the victim to produce sexual gratification, even though Smart denied that he made any contact with the victim and did not present any evidence to contest intent. 2023 IL App (1st) 220427, ¶ 37. The appellate court found the court erred by permitting the State to present prior misconduct evidence and the error required reversal.

¶ 2        We find that Smart's decision not to contest intent, under the facts of this case, had no effect on the admissibility of the evidence proffered here. The State could use evidence of prior acts of misconduct to prove intent because the State charged Smart with a specific-intent crime, thereby placing Smart's intent at issue. However, because the relevance of the proffered evidence of prior acts of misconduct to the charged offense depended on a propensity inference—that the defendant's prior misconduct showed he probably had the same intent when he committed the charged offense—and because the evidence did not meet the specific statutory criteria for the admissibility of propensity evidence (see 725 ILCS 5/115-7.3, 115-7.4, 115-20 (West 2018)), we agree with the appellate court that the circuit court erred when it permitted the State to present evidence of Smart's prior acts of misconduct.

¶ 3        We disagree with the appellate court's holding that the trial court's admission of Smart's prior acts of misconduct required reversal. We hold that the trial court's admission of evidence of Smart's prior acts of misconduct was a harmless evidentiary error, and therefore, we reverse the appellate court's decision and remand the case to the appellate court for further consideration of Smart's arguments that the appellate court did not address in the initial appeal. See 2023 IL App (1st) 220427, ¶ 38.

¶ 4                                I. BACKGROUND

¶ 5        In July 2018, J.P., then 16 years old, visited his sister, Ciera Smith, in Chicago. Smith introduced J.P. to Smart, who had coached basketball for Breakthrough Urban Ministries (Breakthrough), where Smith worked. In mid-July and again on July 25, 2018, J.P. joined Smart and Smart's nephews for outings in Chicago, and in connection with those outings, twice J.P. slept in Smart's bed.

¶ 6        In October 2018, J.P. told his mother that Smart had molested him. J.P. then told Chicago police about the incident, and in October 2019, a grand jury indicted Smart on three counts of aggravated criminal sexual abuse: one count for penetration by placing his mouth on J.P.'s penis, one count for fondling J.P.'s penis, and one count for bringing J.P.'s hand into contact with Smart's penis. See 720 ILCS 5/11-0.1, 11-1.60(d) (West 2018).

¶ 7                              A. Pretrial Motion

¶ 8        The State filed a pretrial motion asking the court to admit evidence of three prior incidents involving Smart's interactions with teenage boys. The State sought to introduce evidence (1) that Smart wrestled inappropriately with a teenage boy at Sterling College, (2) that Smart took a teenage boy alone to a prayer room at Breakthrough, and (3) that Smart inappropriately grabbed the buttocks of a teenage boy at Breakthrough and made an inappropriate sexual remark to the boy. The court found the first two incidents not sufficiently similar to the charged offenses because they did not involve sexual conduct. The court found the third incident admissible, as the court said, "a hand to the buttocks could be perceived as sexual behavior."

¶ 9                                  B. Trial

¶ 10                            1. The State's Case

¶ 11       J.P. testified that Smart invited J.P. to go to the zoo with Smart and his nephew in mid-July 2018. To save Smith the trouble of dropping off J.P. on her way to work, the night before the zoo outing, J.P. stayed overnight in Smart's bed, without incident.

¶ 12       A few weeks later, on July 25, 2018, J.P. agreed to go with Smart and three of his nephews to see fireworks. J.P. testified that in the car Smart pressured J.P. to drink some alcohol Smart had in a cup. They arrived downtown too late for the fireworks. Smart bought the boys a takeout dinner. After they returned home, Smart again pressured J.P. to drink alcohol, and again J.P. drank some. J.P. ate dinner and vomited. J.P. went to the bed where he slept on his prior overnight stay. About 20 minutes after J.P. got in bed, Smart joined him. J.P. testified that, while he

pretended to sleep, Smart touched J.P.'s penis, then placed J.P.'s penis in his mouth until J.P. ejaculated.

¶ 13    Smith corroborated J.P.'s testimony about the outings with Smart. She testified that J.P. did not say anything to her about sexual abuse, but she noticed that after July 25, 2018, J.P. became withdrawn and hostile to Smart.

¶ 14    Smith testified that Breakthrough had a policy of preventing employees from spending time alone with any of the students. If an employee drove several students home, the employee, according to protocol, would text or call a supervisor and the parent of the last student to be dropped off once the employee was alone in the car with one student. When Breakthrough laid off Smart in June 2018, Smart told Smith that he had violated protocol by having a student alone in his car without notifying his supervisor.

¶ 15                                    2. Smart's Case

¶ 16    Robert Muzikowski testified for the defense that Smart had a good reputation for "chastity or morality." The prosecutor asked Muzikowski on cross-examination, "Are you aware of why the defendant stopped working at Trinity Christian Academy in Texas?" Muzikowski answered no to that question and to the next question, "Are you aware that the defendant was reprimanded for being alone with a student and drinking with a student when he was an employee at Sterling College in Kansas?"

¶ 17    Smart's brother, Frank Smart, testified that his sons went with Smart and J.P. in the failed effort to see fireworks. According to Frank Smart, his sons (Smart's nephews) slept in the room with Smart and J.P. on the night of July 25, 2018. Frank Smart checked on the boys and saw nothing amiss.

¶ 18    The following exchange took place during Frank Smart's cross-examination:

"Q. *** Did you later find out the defendant was fired for driving a kid home and grabbing his butt?

A. No, ma'am.

Q. You never asked your brother why he was fired?

A. I just assumed they [were] downsizing. ***

***

Q. You're also aware that back in 2014, the defendant was an assistant coach at Sterling College in Kansas, right?

A. Yes.

Q. And he was reprimanded at that job for being alone with a student and drinking alone with a student too, correct?

A. Not that I knew of."

¶ 19    Next, on direct examination, Smart testified that he took J.P. on two outings with his nephews. Smart testified that he did not have alcohol in the car on July 25, 2018. Smart explained that J.P. vomited the food, but not because of alcohol. Smart testified (1) that J.P. and his nephews all slept in Smart's bedroom for some hours before Smart went to bed and (2) that he did not touch J.P. at all.

¶ 20    On cross-examination the prosecutor asked about the incident that led Breakthrough to fire him. Smart explained that he drove a boy home alone without notifying his supervisor or the boy's parents. The boy later sent a group text message saying, "coach slapped my butt." One of the parents saw the text and complained to Breakthrough. The next day Breakthrough's director of human resources fired Smart. Smart admitted at trial that he had slapped the boy's buttocks and that in March 2018 he attempted to take a boy he was coaching alone into Breakthrough's prayer room but that a security guard stopped him.

¶ 21    The prosecutor asked, "you were reprimanded when you were worked at Sterling College, correct?" Smart answered, "I was never reprimanded." The prosecutor asked, "Did you receive a letter from Sterling College dated March 11th, 2013, reading letter of reprimand to Cecil Smart?" Smart answered, "I don't believe I ever received a letter, ma'am, no." Smart explained:

"There was a kid, I cut him from the team as a collegian. A year later, his father was an attorney. His father tried to sue the school.

My name came up, it got—I was never reprimanded. I continued it very well and successfully, and I left on my terms in 2013."

¶ 22                       3. Stipulation to Evidence of Other Acts of Misconduct

¶ 23      The parties stipulated that Breakthrough's director of human resources would testify:

"[O]n June 22nd, 2018, this defendant was notified by mail that he was terminated from employment at Breakthrough Ministries due to the fact that on June 12th, 2018, while transporting a participant *** home it was alleged that the defendant touched [the participant] inappropriately.

On March 29th, 2018, it was discovered that the defendant was working with a program participant alone in the family plex prayer room ***.

*** [A]s a culmination of policy violations, the defendant's employment at Breakthrough Urban Ministries was terminated effective June 21st, 2018."

¶ 24      Thus, the stipulation included two acts of misconduct involving teenage boys: one on June 12, 2018, and an act on March 29, 2018. The prosecutor introduced no further evidence to rebut Smart's testimony about Sterling College or the cause for his discharge from Breakthrough. The prosecutor did not introduce the evidence promised in the pretrial motion, as the State presented no evidence Smart grabbed the boy's buttocks or that Smart made an improper sexual remark.

¶ 25                                   4. Closing Arguments

¶ 26      In closing arguments the attorneys focused on the credibility of J.P. and Smart. Defense counsel did not object when the prosecutor argued

"on that same line of inappropriate adult behavior, what you have here is the person who was a few months before he meets [J.P.], he is reprimanded for being alone with a student. A child who is approximately the same age as [J.P.], a male child, a few months before.

Despite that reprimand, he then is in a car one month before this incident with [a boy] driving him home and slaps his butt. *** That is inappropriate adult behavior.

***

*** It's character, a pattern of taking jobs that put him around children in places where he can be alone with children and ingratiate himself to children and their families so that he can be alone with them and then abuse them.

We saw two times before he was fired from Breakthrough and the one with [J.P.] Offered to babysit [J.P.] straight down to actually physically putting his mouth on [J.P.'s] penis. That is a pattern.

It is exactly his character using his position of proper authority to abuse a child, that is his character."

¶ 27                           5. The Trial Court's Decision

¶ 28      The trial court extensively reviewed the evidence it considered in reaching its decision. The court said:

"The evidence on the State's behalf basically it consists of the testimony of [J.P.] He was the only one actually present when the alleged incidents occurred.

His sister, Ciera Smith, can corroborate the fact that she dropped [J.P.] off at the defendant's house on two occasions, which she wasn't actually physically present when the alleged incident happened.

So basically the State's case rises and falls with the testimony of [J.P.] I did find many aspects of [J.P.'s] testimony credible, however, I do find the defense witness[es] credible too.

*** [Frank Smart and his wife testified credibly, but] they really can't testify to everything that happened in that bedroom.

***

I find [J.P.'s] testimony credible to sustain Counts 1 and 2. I do not find it credible to sustain Count 3. He said his eyes were closed and he felt something touch his hand. He didn't open his eyes at that point."

¶ 29　　The trial court found Smart guilty of fondling and penetration but not guilty of the charge that Smart brought his penis into contact with J.P.'s hand. The court made no reference to the evidence of other misconduct.

¶ 30　　In a motion for a new trial, Smart again objected to the court's ruling on the pretrial motion permitting the prosecution to present evidence concerning contact with another boy's buttocks. Smart did not raise any issue concerning the discrepancy between the evidence the State promised in the pretrial motion and the evidence actually presented. The court summarily denied the motion, stating "I reviewed all the paragraphs in the defendant's motion for new trial. I find that they do not rise to the level of granting a new trial." The court sentenced Smart to 30 months of probation.

¶ 31　　　　　　　　　C. The Appellate Court's Decision

¶ 32　　The appellate court reversed the convictions and remanded for a new trial. The court reasoned that,

"if a defendant denies the commission of the crime and does not offer any evidence or argument that his actions were or may have been accidental, incidental, or inadvertent, other acts evidence may not be admitted to prove intent ***.

*** Because Smart consistently denied any physical contact with J.P., his intent was not at issue; therefore, we find that the trial court abused its discretion when it admitted the other acts evidence here." 2023 IL App (1st) 220427, ¶¶ 33-34.

¶ 33　　The appellate court found the error prejudicial, and therefore the court reversed the conviction without addressing Smart's argument that he received ineffective assistance of counsel. *Id.* ¶¶ 37-38.

¶ 34    We granted the State's petition for leave to appeal to resolve a conflict between appellate court decisions on the issue of whether the trial court may admit evidence of other acts of misconduct to prove intent when the defendant does not contest intent. See *People v. Wilson*, 214 Ill. 2d 127, 137 (2005) (noting the conflict and leaving it unresolved).

¶ 35                                II. ANALYSIS

¶ 36    The State argues on appeal that (1) the trial court did not abuse its discretion by allowing evidence of Smart's prior misconduct to prove his intent and, (2) if the trial court erred, the error was harmless.

¶ 37                             A. Standard of Review

¶ 38    We must decide whether the trial court committed reversible error when it allowed the State to present evidence that in June 2018 Smart made contact with a boy's buttocks. The trial court has discretion to decide whether to admit evidence of prior misconduct, and this court will not disturb the trial court's determination unless the trial court abused its discretion. *People v. Smith*, 2022 IL 127946, ¶ 25 ("A trial court's decision whether to admit evidence is reviewed for an abuse of discretion."); *People v. Illgen*, 145 Ill. 2d 353, 364 (1991) ("The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that court's decision may not be overturned on appeal absent a clear abuse of discretion."); see *People v. Donoho*, 204 Ill. 2d 159, 182 (2003) ("We will not reverse the trial court's decision to admit other-crimes evidence unless we find that the court abused its discretion.").

¶ 39    To answer the admissibility question here we must interpret the Illinois Rules of Evidence, and our review is *de novo*. *Smith*, 2022 IL 127946, ¶ 25 ("When considering the interpretation of the Illinois Rules of Evidence, we employ the *de novo* standard of review."); see *People v. Gorss*, 2022 IL 126464, ¶ 10 (" 'As with statutes, the interpretation of a supreme court rule presents a question of law, which we review *de novo*.' " (quoting *People v. Tousignant*, 2014 IL 115329, ¶ 8)).

¶ 40    If the trial court erred by admitting evidence, the State bears the burden of proving that, even without the inadmissible evidence, defendant had no reasonable probability of achieving a better result. *In re E.H.*, 224 Ill. 2d 172, 180-81 (2006) (for evidentiary errors, defendant did not suffer prejudice if he had no reasonable probability of achieving a better result); *People v. Jackson*, 2022 IL 127256, ¶ 23 n.1 (the State bears burden of showing the error was harmless).

¶ 41                    B. Illinois Rules of Evidence

¶ 42    The appellate court held that the trial court committed reversible error by admitting evidence that in June 2018 Smart touched a boy's buttocks. Rules 401 through 405 of the Illinois Rules of Evidence govern the admissibility of evidence of uncharged acts of misconduct. See Ill. Rs. Evid. 401 ("Definition of 'Relevant Evidence' "), 402 ("Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible"), 403 ("Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time"), 404 ("Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes"), 405 ("Methods of Proving Character") (eff. Jan. 1, 2011).

¶ 43    Rule 402 of the Rules of Evidence codifies the axiom that the court must not admit irrelevant evidence. Ill. R. Evid. 402 (eff. Jan. 1, 2011) ("Evidence which is not relevant is not admissible."). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011).

¶ 44    Rule 404 codifies the common-law propensity rule. *People v. Peterson*, 2017 IL 120331, ¶ 19 (" 'Illinois Rules of Evidence codified the existing rules of evidence in this state' " (quoting *People v. Nixon*, 2016 IL App (2d) 130514, ¶ 49)); *People v. Dabbs*, 239 Ill. 2d 277, 283 n.1 (2010). The rule establishes the limits on the use of character evidence, expressly limiting the use of character evidence to show propensity:

    "(a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) Character of Accused. In a criminal case, evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]

\* \* \*

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith except as provided by sections 115-7.3, 115-7.4, and 115-20 of the Code of Criminal Procedure (725 ILCS 5/115-7.3, 725 ILCS 5/115-7.4, and 725 ILCS 5/115-20). Such evidence may also be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(a)(1), (b) (eff. Jan. 1, 2011).

¶ 45 Rule 405 limits the means parties may use to present character evidence: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation, or by testimony in the form of an opinion." Ill. R. Evid. 405(a) (eff. Jan. 1, 2011).

¶ 46 In this case Smart presented character evidence when Muzikowski testified to Smart's reputation for "chastity or morality." Under Rule 404(a)(1), Smart's introduction of character evidence permitted the State to present contrary evidence in rebuttal. Ill. R. Evid. 404(a)(1) (eff. Jan. 1, 2011); see *People v. Lewis*, 25 Ill. 2d 442, 445 (1962) ("Once the accused offers proof of his good character, the prosecution may cross-examine and offer evidence of bad character in rebuttal.").

¶ 47 All relevant evidence, including evidence of prior acts of misconduct, must also meet the requirement of Rule 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 48 The court should not reach the probative versus prejudicial balancing test of Rule 403 unless it first determines that the evidence meets the relevance requirement of Rules 401 and 402. *Dabbs*, 239 Ill. 2d at 289 ("Relevance is a threshold requirement that must be met by every item of evidence."); see *People v.*

*Pinkett*, 2023 IL 127223, ¶ 31 (court did not reach issue of balancing probative value against prejudicial effect of evidence of the defendant's postarrest silence because the evidence " 'is considered neither material nor relevant to proving or disproving the charged offense' " (quoting *People v. Sanchez*, 392 Ill. App. 3d 1084, 1096 (2009))). We will consider the application of Rule 403's balancing test to the evidence that Smart touched a boy's buttocks only if we first find that the evidence of the prior misconduct is relevant to prove Smart's intent—that he touched J.P. for the purpose of sexual gratification. See 720 ILCS 5/11-0.1 (West 2018) (definition of "sexual conduct"); *id.* § 11-1.60.

¶ 49        C. The Admissibility of Evidence of Other Acts of Misconduct
            to Prove Intent When the Defendant Does Not Contest Intent

¶ 50        We granted the State's petition for leave to appeal in this case to resolve a conflict between decisions of the appellate court on the issue of whether, when the defendant has not contested intent for a charged offense, the trial court may admit evidence of other misconduct to prove the defendant's intent. Compare *People v. Bobo*, 278 Ill. App. 3d 130, 132-33 (1996) (trial court improperly admitted evidence of prior misconduct to show intent when the defendant did not contest intent), with *People v. Davis*, 2019 IL App (1st) 160408, ¶ 63 ("[T]he State can introduce otherwise admissible other-crimes evidence to prove intent even where the defendant does not put intent directly in issue.").

¶ 51        This court noted, but did not resolve, the conflict in *Wilson*, 214 Ill. 2d at 137. We will (1) examine *Wilson*, (2) examine two cases finding the evidence inadmissible, (3) examine two cases finding the evidence admissible, and (4) examine a federal case that explores the conflict and suggests a resolution of the issue.

¶ 52                                    1. *Wilson*

¶ 53        The State charged Wilson, a high school teacher, with touching the breasts of two of his students for sexual gratification. *Id.* at 129. The trial court permitted the State to present testimony from the two alleged victims and from two other students

who said Wilson similarly molested them. *Id.* A jury found Wilson guilty as charged. *Id.* at 135.

¶ 54    On appeal, Wilson argued that, "because he denied any improper touching, his intent was not at issue and the other-crimes evidence was therefore not admissible." *Id.* The *Wilson* court, in a split decision, noted that a charge of aggravated criminal sexual abuse requires proof of the defendant's specific intent of touching for sexual gratification. *Id.* at 137. The court added:

"some courts hold that intent is automatically at issue for purposes of deciding whether to admit other-crimes evidence, regardless of whether the defendant has made intent an issue in the case. [Citations.] Other courts have taken the opposite approach. See, *e.g.*, *State v. Lipka*, 174 Vt. 377, 391-92, 817 A.2d 27, 39-40 (2002) (intent was not 'genuinely in issue' even though the sexual assault charge at issue was a specific-intent crime; this was because no jury that believed the sexual acts testified to by the victim could have believed that they happened accidentally)." *Id.*

¶ 55    The *Wilson* court held that, even under the more restrictive line of cases (*e.g.*, *Bobo*, 278 Ill. App. 3d at 132-33; *State v. Lipka*, 817 A.2d 27, 39-40 (Vt. 2002)), the trial court properly admitted the evidence of other misconduct because Wilson placed his intent in issue by presenting evidence and arguing that "he was a 'touchy feely type person,' who often placed his hands on students." *Wilson*, 214 Ill. 2d at 138. The *Wilson* court held that a defendant who denies that he committed a criminal act puts his intent in issue if he advances an explanation for the questionable conduct. *Id.*

¶ 56    Smart advanced no similar explanation for J.P.'s testimony that Smart touched him inappropriately. To decide whether the trial court erred by admitting the evidence of other acts of misconduct here, we must address the issue the *Wilson* court left unresolved and the conflict between the decisions in *Bobo* and *Davis*.

2. Cases That Hold Evidence of Other Acts of Misconduct
              Inadmissible to Prove Intent Unless the Defendant Contests Intent

¶ 58         The *Wilson* court cited *Bobo*, 278 Ill. App. 3d at 132-33, as a case where the court disallowed evidence of prior acts of misconduct to show intent because the defendant had not contested intent. In *Bobo*, a student testified during a jury trial that Bobo, a teacher, sexually abused her. *Id.* at 131. An investigator for the Department of Children and Family Services testified that other students made similar claims against Bobo. *Id.* at 132. The appellate court reversed Bobo's conviction, explaining:

> "the State introduced evidence of other wrongful acts, allegedly committed by defendant against several other female students ***. *** Admitting into evidence separate acts of sexual misconduct with other students at other times and places for the purposes of showing intent, guilty knowledge, accident, or absence of mistake simply is unnecessary, as these factors are shown by testimony concerning the act itself. [Citation.] The erroneous admission of such evidence, being highly prejudicial in nature, calls for reversal." *Id.* at 132-33.

¶ 59         The Iowa Supreme Court reasoned similarly in *State v. Thoren*, 970 N.W.2d 611 (Iowa 2022). The State charged Thoren, a massage therapist, with sexually abusing L.R., one of his massage clients. *Id.* at 618-19. The trial court permitted other clients to testify that Thoren sexually abused them. *Id.* at 618. The Iowa Supreme Court reversed the conviction, reasoning:

> "The State can offer evidence from Thoren's former clients to prove intent only if Thoren's intent is a legitimate disputed issue the jury needs to decide. ***
>
>     ***
>
> *** [T]he elements of a charged offense do not automatically become legitimate, disputed factual issues in a case. We have cautioned that [e]vidence of an unconnected prior crime is always evidence of propensity and never evidence of a specific intent to commit the crime charged. *** Where intent is merely a formal issue derived from the elements of the offense, and is not being

- 14 -

controverted, the argument for receiving [other acts] evidence falters." (Internal quotation marks omitted.) *Id.* at 628-30.

See *Lipka*, 817 A.2d at 39-40 (trial court improperly admitted evidence of prior misconduct to show intent when the defendant did not contest intent); *United States v. Sumner*, 119 F.3d 658 (8th Cir. 1997) (same); *United States v. Colon*, 880 F.2d 650, 659-61 (2d Cir. 1989) (same); *State v. Wells*, 221 P.3d 561, 571 (Kan. 2009) (trial court should have barred prosecutor from referring to prior convictions in opening statement when defendant offered to remove issue of intent from case).

¶ 60 The aforementioned cases accord with the reasoning of Edward J. Imwinkelried, who argued that, in deciding whether to admit evidence of other misconduct, the court should focus on the inference the trier of fact must draw to find that the evidence increases the probability that the accused committed the offense at issue. Edward J. Imwinkelried, *The Use of Evidence of an Accused's Uncharged Misconduct to Prove Mens Rea: The Doctrines Which Threaten to Engulf the Character Evidence Prohibition*, 51 Ohio St. L.J. 575, 580-84 (1990). He contended that, when the prosecution uses a prior similar offense to prove intent, the prosecution relies on an inference that the defendant "probably harbor[ed] the same intent at the time of the charged offense," violating the prohibition on propensity evidence. (Internal quotation marks omitted.) *Id.* at 579.

¶ 61 3. Cases That Hold Evidence of Other Acts of Misconduct
Admissible to Prove Intent Regardless of
Whether the Defendant Contests Intent

¶ 62 The Illinois Appellate Court in *Davis*, 2019 IL App (1st) 160408, ¶¶ 60-63, disagreed with *Bobo*. The State, in a prosecution for possession of cocaine, introduced evidence that Davis also possessed several guns. *Id.* ¶ 57. The State contended, " 'the combination of the guns and the drugs *** demonstrate[s] Defendant's intent in this case.' " *Id.* Davis pointed out that he had never contested intent. *Id.* The appellate court held that "evidence of other crimes can be used to prove intent, even if intent is not put expressly at issue because the burden remains on the prosecution to prove intent beyond a reasonable doubt regardless of whether the defendant disputes it." *Id.* ¶ 62. The court added that, if courts adopted the reasoning of cases like *Bobo*, "a defendant could deprive the State of its right to

- 15 -

introduce relevant, competent evidence simply by staying silent about certain elements of the offense for which he or she has been charged. That is out of step with the high burden placed on the State in a criminal prosecution." *Id.* ¶ 63.

¶ 63    The United States Court of Appeals for the Ninth Circuit also approved a decision to admit evidence of prior acts of misconduct to prove intent even though the defendant did not contest intent. In *United States v. Hadley*, 918 F.2d 848, 851 (9th Cir. 1990) (quoting 18 U.S.C. § 2245(3) (1988)), the prosecution charged Hadley with abusive sexual contact, and to prove the charge, the prosecution needed to prove that Hadley acted " 'with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.' " The trial court permitted the prosecution to present evidence of similar misconduct to prove his specific intent. Hadley argued the court should not have admitted the evidence because Hadley flatly denied that he made any contact with the alleged victim and he "offered not to argue the issue of intent." *Id.*

¶ 64    The *Hadley* court said:

"The government must prove every element of a crime beyond a reasonable doubt. [Citation.] This burden is not relieved by a defendant's promise to forgo argument on an issue. [Citation.] Hadley cannot preclude the government from proving intent simply by focusing his defense on other elements of his crime. Hadley's choice of defense did not relieve the government of its burden of proof and should not prevent the government from meeting this burden by an otherwise acceptable means." *Id.* at 852.

See *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir. 1989) ("In cases involving specific intent crimes, intent is automatically in issue, regardless of whether the Defendant has made intent an issue in the case."); *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) (the State may use other crimes evidence to prove intent even where the defendant does not contest intent); *State v. Davidson*, 2000 WI 91, ¶ 65, 236 Wis. 2d 537, 613 N.W.2d 606 (same); *Henderson v. State*, 900 S.E.2d 596, 600-01 (Ga. 2024) (same).

¶ 65                        4. Balancing the Competing Concerns

¶ 66        In the conflicting decisions, the courts have focused on competing concerns: on the one hand, the State has the burden of proving intent for specific-intent crimes, and the choice of defenses should not determine presentation of the State's case; on the other hand, other crimes evidence usually has unfair prejudicial effect and little probative value when the defendant does not contest intent. We find that the United States Court of Appeals for the Seventh Circuit persuasively addressed these competing concerns in *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014). The prosecution charged Gomez with selling cocaine. *Id.* at 850. The evidence showed that numerous sales occurred in the home Gomez shared with his brother. To prove that Gomez, rather than his brother, sold the cocaine, the prosecution presented evidence that Gomez had some cocaine in his bedroom. The jury found Gomez guilty. *Id.*

¶ 67        The court of appeals delineated the rules for proving intent for a charged offense by presenting evidence of other misconduct. *Id.* at 852. First, the trial court must determine whether the evidence is relevant for a purpose other than showing propensity. *Id.* at 855-56. Under Rule 404 of the Federal Rules of Evidence, as under the Illinois Rules of Evidence, the permissible purposes include, but are not limited to, "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1); see Ill. R. Evid. 404(b) (eff. Jan. 1, 2011).

¶ 68        Second, the court must determine how the evidence advances the stated purpose.

> "[I]t's not enough for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it. *** [T]he rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Gomez*, 763 F.3d at 856.

¶ 69        The court explained:

> "When one looks beyond the purposes for which the evidence is being offered and considers what inferences the jury is being asked to draw from that

evidence, and by what chain of logic, it will sometimes become clear *** that despite the label, the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity to commit the charged offense." (Internal quotation marks omitted.) *Id.*

"This is not to say that other-act evidence must be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference." (Emphasis in original.) *Id.*

¶ 70 Third, once the trial court determines that the evidence is relevant without relying on a propensity inference, the trial court must determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence. *Id.* at 856-57; see Ill. R. Evid. 403 (eff. Jan. 1, 2011). In balancing the probative value of the evidence against its prejudicial effect, "the degree to which the non-propensity issue actually is disputed in the case will affect the probative value of the other-act evidence." *Gomez*, 763 F.3d at 857; see *United States v. Kinchen*, 729 F.3d 466, 473 (5th Cir. 2013) ("The prejudicial effect of extrinsic evidence substantially outweighs its probative value when the relevant exception, *i.e.* [intent], is uncontested, because the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice.").

¶ 71 The *Gomez* court summarized the applicable rule:

"when intent is 'at issue'—in cases involving specific-intent crimes or because the defendant makes it an issue in a case involving a general-intent crime— other-act evidence may be admissible to prove intent, but it must be relevant without relying on a propensity inference, and its probative value must not be substantially outweighed by the risk of unfair prejudice. And again, the degree to which the non-propensity issue actually is contested may have a bearing on the probative value of the other-act evidence." (Emphasis omitted.) *Gomez*, 763 F.3d at 859.

¶ 72 We apply the reasoning of *Gomez* to our interpretation of Rule 404 and hold that propensity evidence—"[e]vidence of other crimes, wrongs, or acts *** to prove the character of a person in order to show action in conformity therewith"—is not admissible unless it qualifies under the specific exceptions allowing for propensity

evidence in the limited circumstances "as provided by sections 115-7.3, 115-7.4, and 115-20 of the Code of Criminal Procedure (725 ILCS 5/115-7.3, 725 ILCS 5/115-7.4, and 725 ILCS 5/115-20)." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). The trial court may admit evidence of other crimes, wrongs, or acts of misconduct to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" (*id.*), but the evidence "must be relevant without relying on a propensity inference" (*Gomez*, 763 F.3d at 859). The reasoning of *Gomez* reflects Rule 404 and its express limitation that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except *** as provided by sections 115-7.3, 115-7.4, and 115-20." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). If the State shows the evidence relevant without relying on a propensity inference, the court, applying Rule 403 (Ill. R. Evid. 403 (eff. Jan. 1, 2011)), must determine whether the prejudicial effect of the evidence substantially outweighs its probative value.

¶ 73                     D. Application of Rule 404 to the Case Against Smart

¶ 74               1. Use of Other Acts of Misconduct in Rebuttal of Character Evidence

¶ 75        We begin our application of Rule 404 by noting that the State did not introduce any evidence of Smart's other acts of misconduct in its case-in-chief. Prosecutors first mentioned the acts of misconduct in their cross-examination of Muzikowski after Smart called Muzikowski as a witness, and Muzikowski testified, to prove Smart's good character, that he had a good reputation for chastity and morality. The State asked Muzikowski whether he knew why Smart stopped working for Sterling College. On cross-examination of both Frank Smart and Smart, the State suggested that Sterling College reprimanded Smart for his alleged prior acts of misconduct with a boy.

¶ 76        Illinois courts do not allow prosecutors to use particular acts of misconduct to rebut evidence of good character or to cross-examine defense character witnesses. See Ill. R. Evid. 405, Comment (eff. Jan. 1, 2011) ("Specific instances of a person's conduct as proof of a person's character *** are not generally admissible as proof that the person acted in conformity therewith."); *People v. Anderson*, 337 Ill. 310, 332 (1929) ("On cross-examination or in rebuttal of proof of good character particular acts of misconduct may not be shown."); *People v. Patterson*, 154 Ill. 2d

414, 464 (1992) ("specific prior acts are not admissible to show another person's character as evidence of his conduct on a particular occasion"); Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 405.1, at 282 (10th ed. 2011) ("Specific instances of relevant conduct of the person whose character has been testified to may not be brought out on either direct [citation] or cross-examination of the character witness or on rebuttal.").

¶ 77    However, Smart forfeited the issue. Defense counsel did not object to the State's questions, during the cross-examinations of Muzikowski, Frank Smart, or Smart, on the basis of improper examination concerning specific acts of misconduct. See Ill. R. Evid. 103(a)(1) (eff. Oct. 15, 2015) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and *** a timely objection or motion to strike appears of record, stating the specific ground of objection ***."); *People v. Brand*, 2021 IL 125945, ¶ 32 (" 'defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review' " (quoting *People v. Woods*, 214 Ill. 2d 455, 470 (2005))). Because defense counsel failed to object to the questions about specific acts of misconduct or raise the issue in a posttrial motion, the trial court had no opportunity to consider the reference to Smart's alleged specific acts of misconduct, and therefore he forfeited the issue. See *Jackson*, 2022 IL 127256, ¶ 15 (failure to object at trial and in a posttrial motion forfeits the issue because the "failure *** deprives the circuit court of an opportunity to correct the error, thereby wasting time and judicial resources").

¶ 78    Plain errors or defects affecting substantial rights may be noticed, although they were not brought to the attention of the trial court. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *People v. Smith*, 2019 IL 123901, ¶ 14; *People v. McNeal*, 175 Ill. 2d 335, 364 (1997). But Smart has not asked this court to address as plain error the forfeited issue of whether the trial court should have barred the prosecution from cross-examining Muzikowski, Frank Smart, and Smart about specific acts of alleged misconduct. Thus, Smart has forfeited the issue of whether the prosecutor improperly referred to specific acts of misconduct on cross-examination of defense witnesses. *People v. Mudd*, 2022 IL 126830, ¶ 21; *Brand*, 2021 IL 125945, ¶ 32. Accordingly, we find no reversible error in the trial court's rulings on the cross-examination of defense witnesses, and we find no reversible error in the court's decisions permitting the use of evidence of other misconduct to rebut Smart's proof

of his good character.

¶ 79                         2. Use of Other Acts of Misconduct to Prove Intent

¶ 80                 a. The Code of Criminal Procedure of 1963 Permits Evidence of
                     Specific Prior Acts to Show Propensity in Limited Circumstances

¶ 81         The State introduced evidence of two of Smart's prior acts of misconduct by way of stipulation and used the evidence in closing argument to support an inference that Smart knowingly touched J.P. "for the purpose of sexual gratification." See 720 ILCS 5/11-1.60(d) (West 2018); *id.* § 11-0.1 (definition of "sexual conduct"). The State may use prior acts of misconduct as propensity evidence for proof of aggravated criminal sexual abuse under certain limited circumstances. See 725 ILCS 5/115-7.3 (West 2018); *Donoho*, 204 Ill. 2d at 176 ("the legislature enacted section 115-7.3 to enable courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses if the requirements of section 115-7.3 are met"); *People v. Ward*, 2011 IL 108690, ¶ 25 ("[O]ur legislature has chosen to provide a limited exception to this general rule of inadmissibility for other-crimes evidence intended to show the defendant's propensity to commit crimes. If a defendant is tried on one of the enumerated sex offenses, section 115-7.3(b) of the Code [citation] allows the State to introduce evidence that the defendant also committed another of the specified sex offenses.").

¶ 82         The Code of Criminal Procedure of 1963 permits only the evidence of prior enumerated crimes to prove certain specified sexual offenses and limits the admissible evidence to proof of

             "predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, criminal sexual abuse, child pornography, aggravated child pornography, criminal transmission of HIV, or child abduction[;] ***

             *** battery, aggravated battery, first degree murder, or second degree murder when the commission of the offense involves sexual penetration or sexual conduct[;] ***

- 21 -

*** rape, deviate sexual assault, indecent liberties with a child, or aggravated indecent liberties with a child." 725 ILCS 5/115-7.3(a)(1), (2), (3) (West 2018).

See *id.* § 115-7.3(b).

¶ 83                              b. The Trial Court Erred by Admitting Propensity Evidence
in the Case Against Smart

¶ 84        The State admits that the evidence here does not show that Smart committed any of the crimes listed in section 115-7.3 (*id.* § 115-7.3), and therefore the evidence here does not meet the strict statutory criteria for use of the prior misconduct as propensity evidence. The State asked the court to infer that on July 25, 2018, Smart intended to touch J.P. for the purpose of sexual gratification, based on evidence that on June 18, 2018, Smart touched a different boy's buttocks. The State has not explained how the parties' stipulation that Smart touched a boy's buttocks in June 2018 supports an inference that Smart, on July 25, 2018, intended his acts with J.P. to produce sexual gratification without relying on an inference of a propensity to sexually molest teenage boys.

¶ 85        Under Rule 404, the trial court should have excluded the stipulation to facts about the June 2018 incident as propensity evidence. See *Gomez*, 763 F.3d at 856. Assuming the evidence of touching the boy's buttocks had some relevance to showing Smart's intent for the specific-intent crime of aggravated criminal sexual abuse, the State did not show the evidence admissible, at the second step in the analysis under Rule 404, because it relies on an inference that Smart had a propensity for molesting teenage boys and it does not meet the requirements for the permission granted in section 115-7.3 for the use of prior misconduct to prove propensity. See *id.* Therefore, we do not reach the issue, at the third step of the analysis, of whether the probative value of the evidence outweighs its prejudicial effect. See (Ill. R. Evid. 403 (eff. Jan. 1, 2011)); *Gomez*, 763 F.3d at 857. Accordingly, we hold that the trial court erred by permitting the State to introduce evidence that Smart slapped the buttocks of another boy at Breakthrough, because the State relied on a propensity inference to establish its relevance to the criminal sexual abuse charges against Smart.

¶ 86                    E. Does the Circuit Court's Evidentiary Ruling Require Reversal?

¶ 87        Our inquiry does not end with our finding of error in the trial court's decision to permit the State to present propensity evidence. An error in the admission of evidence of other misconduct warrants reversal "only if the evidence was a material factor in the defendant's conviction such that, without the evidence, the verdict likely would have been different." (Internal quotation marks omitted.) *People v. Adkins*, 239 Ill. 2d 1, 23 (2010); *People v. Hall*, 194 Ill. 2d 305, 339 (2000). Here, the appellate court made a finding that the trial court's errors required reversal because the appellate court could not find beyond a reasonable doubt that the evidence did not affect the trial court's decision. 2023 IL App (1st) 220427, ¶¶ 36-37. We find that the appellate court applied the standard appropriate for review of constitutional errors, rather than the standard applicable here, for review of evidentiary errors.

¶ 88                              1. The Standard for Finding Harmless Error

¶ 89        The appellate court, quoting *People v. Quintero*, 394 Ill. App. 3d 716, 728 (2009), asserted, " 'The State bears the burden of persuasion to prove beyond a reasonable doubt that the result would have been the same without the error.' " 2023 IL App (1st) 220427, ¶ 36. The standard for review of trial court errors stated in *Quintero* derives (through *People v. Herron*, 215 Ill. 2d 167 (2005), and *People v. Thurow*, 203 Ill. 2d 352, 363 (2003)) from *Chapman v. California*, 386 U.S. 18, 24 (1967), where the United States Supreme Court said that, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

¶ 90        In *In re E.H.*, 224 Ill. 2d at 180, this court explained that the reasonable doubt standard applied to constitutional errors but that "evidentiary error is harmless where there is no *reasonable probability* that the [trier of fact] would have acquitted the defendant absent the error" (emphasis in original and internal quotation marks omitted). See *People v. Heineman*, 2023 IL 127854, ¶ 95 ("evidentiary error is harmless where there is no reasonable probability that the jury would have acquitted the defendant absent the error" (internal quotation marks omitted)). The rule of evidence barring use of other acts of misconduct to prove propensity is "not of

constitutional dimension." *People v. Chapman*, 2012 IL 111896, ¶ 32; see *Dabbs*, 239 Ill. 2d at 293.

¶ 91    We find that the appellate court applied the standard for constitutional error, inapplicable here to the trial court's evidentiary error, when it required the State to prove beyond a reasonable doubt that the erroneous admission of other misconduct evidence had no effect on the result. 2023 IL App (1st) 220427, ¶ 36.

¶ 92                2. Evidentiary Errors in Bench Trials

¶ 93    Next, we must determine whether the trial court's error in the admission of evidence of other misconduct requires reversal of Smart's convictions. Applying the correct standard, we address the issue of whether we find a reasonable probability that the trial court would have acquitted Smart if the court had excluded the propensity evidence. See *In re E.H.*, 224 Ill. 2d at 180-81; *Heineman*, 2023 IL 127854, ¶ 95.

¶ 94    "[W]hen a trial court is the trier of fact a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion." *People v. Naylor*, 229 Ill. 2d 584, 603 (2008). The presumption " 'may be rebutted where the record affirmatively shows the contrary.' " *Id*. at 603-04 (quoting *People v. Gilbert,* 68 Ill. 2d 252, 258-59 (1977)). We find no such affirmative showing on the record here.

¶ 95    Cases from other jurisdictions in similar circumstances—where the trial court erroneously allowed evidence of other misconduct—found that the records in those cases did not overcome the presumption that the trial court relied on only admissible evidence. In *Cox v. State*, 2020 WY 147, ¶ 3, 477 P.3d 82, M.F., 14 years old, slept overnight at the home of her friend, M.M. After M.F. reported an incident with M.M.'s 26-year-old brother, Cox (*id.* ¶¶ 3-6), prosecutors charged Cox with sexual abuse of a minor (*id.* ¶ 8). At the bench trial, M.F. testified that Cox asked her to perform oral sex on him and that she did so. *Id.* ¶ 9. The court permitted M.F. to testify that sometime before the oral sex incident, M.F. wrestled with Cox and that Cox put his finger in her vagina. *Id.* ¶ 12. Cox admitted he wrestled with M.F., but he testified he did not put his finger in her vagina, he never asked her for oral sex,

and she never performed oral sex on him. *Id.* ¶¶ 11-12. The trial court found Cox guilty of sexual abuse of a minor. *Id.* ¶ 13.

¶ 96    On appeal, the Supreme Court of Wyoming found the trial court erred by permitting prosecutors to present evidence about the wrestling encounter because the prosecution failed to disclose the evidence before trial. *Id.* ¶¶ 20-21. The *Cox* court said:

> "Mr. Cox's case was tried as a bench trial. The concerns raised by admission of other misconduct evidence are less critical in a bench trial than in a trial to a jury. *** [A] trial judge is learned in the law and understands the need to convict a defendant of the charged crime rather than on the basis of a general belief the defendant has a criminally-oriented disposition. [Citation.]

> The district court made detailed findings in support of its verdict with no mention of the wrestling incident[.] ***

> [M.F.] testified that Mr. Cox had her perform oral sex, and the district court found this testimony credible. *** We find no reasonable probability that the verdict against Mr. Cox would have been more favorable had the wrestling incident evidence not been admitted." (Internal quotation marks omitted.) *Id.* ¶¶ 23-25.

¶ 97    The United States Court of Appeals for the Seventh Circuit reasoned similarly in *United States v. Menk*, 406 F.2d 124 (7th Cir. 1969). The prosecution charged Menk with selling amphetamine. *Id.* at 125. The prosecution's key witness testified that Menk told him about Menk's prior involvement in other drug offenses, prostitution, dealing in stolen goods, and attacking excise men. *Id.* The *Menk* court found the admission into evidence of the testimony about other crimes constituted error. *Id.* at 126. The court said:

> "However, since this was a bench trial and since it appears from the record that the trial judge did not consider the erroneously admitted evidence in reaching his findings of fact, we hold that the error does not justify reversal.

> ***

- 25 -

*** [T]he only evidence used to determine this issue was that adduced from the testimony of the defendants themselves. The District Court, in its Findings of Fact, analyzes the defendant's testimony in detail and comes to the conclusion that appellant's word could not be believed, regarding the offenses charged, over that of the government agent." *Id.*

¶ 98       In *Birmingham v. State*, 279 N.W. 15, 16 (Wis. 1938), the trial court found Birmingham guilty of "carnal knowledge and abuse" of a girl not yet 18 years old. The appellate court agreed with Birmingham that the court erred "in admitting evidence which tended to prove that the defendant on other occasions had committed other criminal offenses and had been guilty of other grossly immoral acts." *Id.* at 16-17. The court emphasized: "Had this trial been to the court and a jury we would not hesitate to reverse the judgment and to order a new trial." *Id.* at 17.

¶ 99       The court affirmed the conviction despite the improper evidence, reasoning:

"The record reveals that the trial court was cognizant of the rule which renders evidence of other crimes incompetent to prove a defendant guilty of a particular crime charged, which crime is wholly disconnected from the other crimes sought to be proved. *** The trial court several times admonished the attorneys present to confine their questions to March 31, 1937, the date of the alleged offense. The trial court was, no doubt, familiar with the established rule applicable to the admission of incompetent evidence when a trial is had to the court alone. The knowledge of that rule may have been responsible for the failure of the court promptly to exclude such incompetent testimony. The rule which this court applies in reviewing a finding of a trial court, in either a civil or a criminal case, tried to the court, is that it is presumed that improper evidence taken under objection was given no weight in reaching the final conclusion unless the contrary appears." *Id.*

¶ 100      In accord with *Naylor*, *Cox*, *Menk*, and *Birmingham*, we hold that the trial court's erroneous admission of other misconduct evidence during Smart's bench trial does not justify reversal unless the record supports an inference the trial court relied on the inadmissible evidence.

¶ 101                    3. Does the Trial Court's Ruling on the Pretrial Motion
                             Show It Relied on Inadmissible Evidence?

¶ 102        The appellate court here reasoned that, "[w]here an objection has been made to
the evidence and overruled, it cannot be presumed that the evidence did not enter
into the court's consideration. The ruling itself indicates that the court thought the
evidence proper." (Internal quotation marks omitted.) 2023 IL App (1st) 220427,
¶ 37 (citing *People v. Hampton*, 96 Ill. App. 3d 728, 731 (1981)). The dissent adopts
this reasoning and also cites *Naylor* in support. *Infra* ¶ 115. In *Hampton* and *Naylor*
the trial court heard the evidence before determining its admissibility. We find
*Hampton* and *Naylor* distinguishable because the trial court here heard no testimony
on the State's pretrial motion for permission to use evidence of other misconduct.
The trial court based its ruling solely on the proffer of the evidence the State would
introduce, and the evidence eventually introduced did not match the proffer. The
trial court held that two of the incidents the State described had insufficient
relevance because the proffer did not show sexual conduct. The court permitted the
State to put in evidence about the third incident because "a hand to the buttocks
could be perceived as sexual behavior." At the trial, the court accepted the parties'
stipulation to evidence of two acts of misconduct that led Breakthrough to discharge
Smart.

¶ 103        The State did not present any evidence of other acts of misconduct in its case-
in-chief. The prosecutor first suggested other acts of misconduct in the questions
asked on cross-examination of defense witnesses, questions that implied the State
had evidence of sexual misconduct. But the State never introduced any evidence of
prior sexual misconduct: there was no evidence of prior predatory criminal sexual
assault of a child, no evidence of criminal sexual assault, no evidence of criminal
sexual abuse, and no evidence of any of the other offenses listed in section 115-7.3.
See 725 ILCS 5/115-7.3 (West 2018). The State presented only the stipulation that
Breakthrough dismissed Smart because (1) he violated protocol when he tried to
take a boy, alone, into the prayer room and (2) he violated protocol when he drove
a boy home alone without notifying his supervisor and he then made inappropriate
physical contact with the boy. The State did not rebut Smart's testimony that the
only contact with the other boy was a slap on the buttocks, which led to the
discharge only because the boy posted on social media, "coach slapped my butt,"
and a parent thought the contact improper.

¶ 104 The judge, in ruling on the pretrial motions, explicitly recognized that, without proof of conduct of a specifically sexual nature with teenage boys, the prior alleged misconduct was not relevant to this case. The stipulation here does not show that Smart engaged in the prior conduct for the purpose of sexual gratification. The judge also did not refer to the evidence of other misconduct at all in her summary of the evidence supporting the convictions. See *Cox*, 2020 WY 147, ¶¶ 23-25; *Menk*, 406 F.2d at 125-27.

¶ 105 F. The Dissent

¶ 106 The dissent maintains that the record fails to establish (1) that Smart's inadmissible acts of misconduct were not a material factor in the trial judge's decision to convict and (2) that the trial judge's decisions—(a) granting the State's pretrial motion *in limine* admitting one of Smart's acts of misconduct and (b) denying Smart's posttrial motion objecting to the trial court's erroneous admission of Smart's acts of misconduct during the trial—rebut the presumption that the trial court only considers admissible evidence when it makes a decision. *Infra* ¶ 121. The trial judge's explicit recognition that only prior sexual misconduct would be relevant and its summary of the evidence, making no reference to the prior misconduct, establish that Smart's acts of misconduct were not a material factor in the court's decision. The evidence here does not overcome the presumption that the court considered only the admissible evidence of Smart's conduct with J.P. See *Naylor*, 229 Ill. 2d at 603. The trial court considered J.P.'s testimony and Smart's testimony and concluded that J.P. was the more credible witness. We find nothing in the record to support a conclusion that the trial court relied on the inadmissible evidence, and we find no reasonable probability that the improperly admitted evidence affected Smart's convictions. Therefore, we hold the trial court's error does not justify reversal.

¶ 107 III. CONCLUSION

¶ 108 In sum, we hold that the trial court may admit evidence of other acts of misconduct to prove the defendant's intent if the State shows either (1) the relevance of the evidence does not depend on a propensity inference or (2) the evidence meets the specific requirements for admissibility of evidence to show propensity under Rule 404. Ill. R. Evid. 404 (eff. Jan. 1, 2011). If the State shows

that intent is at issue and the proffered evidence does not depend on a propensity inference or it meets the requirement for propensity evidence, the State must also show that the risk of unfair prejudice does not substantially outweigh the probative value of the evidence. Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 109    The State put intent at issue by charging Smart with a specific-intent offense, and Smart's decision not to contest intent does not negate the State's need to prove intent as an element of the offense. However, the evidence proffered here (that Smart touched another boy's buttocks) depends on a propensity inference—that because Smart inappropriately touched one boy, he likely intended his conduct with J.P. to produce sexual gratification—for its relevance to the charged offense. Because the State did not show the evidence fell within the specific exception in Rule 404 for propensity evidence, the trial court should have excluded it. We do not reach the issue of whether the unfair prejudice from the evidence outweighed its probative value, and therefore Smart's decision not to contest intent has no bearing on the result here.

¶ 110    Next, we find the trial court's error in admitting the propensity evidence does not require reversal because the State has met its burden of showing there was no reasonable probability that Smart would have achieved a better result without the error. We also find that the trial court did not commit reversible error when it permitted the prosecutor to cross-examine defense witnesses about their knowledge of the circumstances under which Smart left some of his jobs, because the evidence rebutted Smart's evidence of his good character and Smart forfeited his claim that the trial court erred by permitting the State to use specific acts of misconduct to rebut his character evidence.

¶ 111    Accordingly, we reverse the appellate court's judgment and remand for the appellate court to consider the arguments it did not address in the initial appeal.

¶ 112    Appellate court judgment reversed; cause remanded.

¶ 113　　　JUSTICE O'BRIEN, dissenting:

¶ 114　　　I agree with the majority that the circuit court erred in admitting evidence of defendant's prior uncharged act of misconduct (slapping the buttocks of another boy at Breakthrough) to prove defendant intended his contact with the victim in this case (J.P.) to produce sexual gratification. The evidence did not meet the criteria for admission as propensity evidence under section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2018)). See *supra* ¶ 84. I also agree that Illinois Rule of Evidence 404 (eff. Jan. 1, 2011) did not permit the admission of the evidence to prove defendant's intent because the State failed to explain how the evidence supported an inference that defendant "intended his acts with J.P. to produce sexual gratification without relying on an [impermissible] inference of a propensity to sexually molest teenage boys." *Supra* ¶ 84.

¶ 115　　　Despite the erroneous admission of this evidence, the majority affirms defendant's convictions, holding the error harmless. *Supra* ¶ 105. In doing so, the majority correctly acknowledges that reversal based on such an error is required " 'only if the evidence was a material factor in the defendant's conviction such that, without the evidence, the verdict likely would have been different.' " *Supra* ¶ 87 (quoting *People v. Adkins*, 239 Ill. 2d 1, 23 (2010)). However, the majority fails to apply this substantive test and instead chooses to focus on the arbitrary fact that this case involved a bench trial rather than a jury trial. *Supra* ¶ 94. Reasoning that we must presume a trial court only considers evidence that is relevant and disregards inadmissible evidence, the majority postulates that the trial court here must have ignored the prejudicial propensity evidence, despite the court's explicit decision to allow the evidence at trial over defendant's objection and subsequent posttrial motion challenging the admission. I dissent from this specific finding and would instead reverse defendant's convictions and remand the matter for a new trial as provided in *People v. Naylor*, 229 Ill. 2d 584 (2008).

¶ 116　　　The majority relies on several foreign jurisdiction decisions (*Cox v. State*, 2020 WY 147, 477 P.3d 82; *State v. Mahogany*, 07-360, p. 11 (La. App. 5 Cir. 10/30/07); 970 So. 2d 1150, 1157; *United States v. Menk*, 406 F.2d 124 (7th Cir. 1968); *Birmingham v. State*, 279 N.W. 15 (Wis. 1938)) (see *supra* ¶¶ 95-99) to conclude "the trial court's erroneous admission of other misconduct evidence during Smart's bench trial does not justify reversal unless the record supports an inference the trial

court relied on the inadmissible evidence" (*supra* ¶ 100). In so holding, the majority distinguishes precedent from this court (*Naylor*, 229 Ill. 2d 584). I disagree and believe *Naylor* is directly on point. Because I believe *Naylor* is controlling, I hold that the majority's cited decisions should not factor into our analysis. See *Bayer v. Panduit Corp.*, 2016 IL 119553, ¶ 35 (finding no need to explore decisions from foreign jurisdictions where there is Illinois precedent on point).

¶ 117　　In *Naylor* a dispute arose over whether the defendant's prior conviction for aggravated battery could be admitted for the purpose of impeaching defendant's credibility. *Naylor*, 229 Ill. 2d at 591. Over the defendant's objection, the trial court admitted the evidence, finding the conviction occurred within the required 10-year period. *Id.* The trial court found the defendant guilty. *Id.* On appeal to this court, we determined the trial court erred by admitting the evidence, specifically finding the evidence of the defendant's prior conviction barred by the 10-year rule. *Id.* at 598.

¶ 118　　We then considered whether the error was reversible. *Id.* at 602. We recognized the general principle that the trier of fact in a bench trial is presumed to disregard improperly admitted evidence. *Id.* at 603. However, we noted that the presumption is rebutted when an objection is made and the trial court erroneously admits the evidence. *Id.* We reasoned, " ' "[w]here an objection has been made to the evidence and overruled, it cannot be presumed that the evidence did not enter into the court's consideration. The ruling itself indicates that the court thought the evidence proper." ' " *Id.* at 605 (quoting *People v. Hampton*, 96 Ill. App. 3d 728, 731 (1981), quoting *People v. De Groot*, 108 Ill. App. 2d 1, 11 (1968)). We therefore held "the trial court improperly considered this incompetent evidence and, consequently, committed reversible error." *Id.* Put more plainly, the holding in *Naylor* illustrates the reality that, once the trial court *actively allows* a skunk into the evidentiary equation, we cannot simply *presume* that the trial court ignores the smell. See generally *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962).

¶ 119　　Like the record in *Naylor*, the record before us rebuts the general principle that the trial court in a bench trial is presumed to disregard improperly admitted evidence. *Naylor*, 229 Ill. 2d at 603. The only factual difference between *Naylor* and the instant case is that the defendant in *Naylor* failed to preserve the issue. See *id.* at 591. Even though the defendant in *Naylor* made an objection, the defendant

never included the issue in his posttrial motion. *Id.* Therefore, *Naylor* went on to examine whether the evidence was closely balanced under the first prong of the plain error doctrine. *Id.* at 605-06. Finding the evidence closely balanced, this court reversed and remanded for a new trial. *Id.* 609-10.

¶ 120 Here, the issue regarding the trial court's erroneous admission of improper evidence is preserved, as defendant objected at trial and subsequently filed a posttrial motion challenging the court's admission of such evidence. Thus, the record before us acts to rebut the presumption that the trial court disregarded improper evidence even more so than the record in *Naylor*. With the trial court having initially admitted the improper evidence over defendant's objection and then proceeding to erroneously deny defendant's posttrial motion on the matter, we can only conclude that the trial court believed the inadmissible evidence could properly be considered when determining defendant's guilt.

¶ 121 To be clear, a trial court's erroneous admission of improper evidence in a bench trial *may* not always constitute reversible error if, for example, the trial court expressly states that it was not affected by the evidence or that it did not consider the evidence. See, *e.g.*, *People v. Schmitt*, 131 Ill. 2d 128, 137-38 (1989) (trial court confronted with an incriminating statement by a codefendant in a separate but simultaneous bench trial was presumed to have only considered admissible evidence where trial court stated that it would not consider the inadmissible statement against defendant); *People v. Williams*, 246 Ill. App. 3d 1025, 1034 (1993) (same); *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 42 (same); *People v. Littleton*, 2014 IL App (1st) 121950, ¶ 45 (presumption not rebutted where trial court explicitly stated that it only considered the prior misconduct evidence for the proper, limited purpose of establishing *modus operandi*). The record before us, however, is devoid of any such statement by the trial court. Accordingly, I would hold that when (1) the admission of improper evidence is allowed over defendant's objection, (2) the defendant's posttrial motion challenging the admission of the improper evidence is denied, and (3) the trial court fails to make a limiting statement with respect to the improper evidence, a reviewing court cannot simply presume that the improper evidence had no effect on the trial court's judgment.

¶ 122 The majority's strained attempt to excuse the trial court's actions in this case by distinguishing *Naylor* is unavailing. The majority finds it significant that the trial

court based its pretrial motion ruling solely on the proffer of evidence the State would introduce and that the stipulation then did not match the proffer. *Supra* ¶ 102. In particular, the proffer alleged a specific act of sexual misconduct (touching a boy's buttocks), and the eventual stipulation at trial only generally showed that defendant was dismissed by Breakthrough because defendant "touched [a participant] inappropriately." Because the trial court explicitly noted "that, without proof of conduct of a specifically sexual nature with teenage boys, the prior alleged misconduct was not relevant to this case," the majority believes the trial court must not have considered this evidence because the stipulation "does not show that [defendant] engaged in the prior conduct for the purpose of sexual gratification." *Supra* ¶ 104. Such reasoning prompts the question: Why then did the trial court allow the admission of this irrelevant stipulation into evidence? If the majority were correct, then the trial court would have disallowed the admission of the stipulation. That did not happen, however, because the trial court already determined the evidence would be admitted as propensity evidence. It was this ruling that resulted in the evidence being stipulated to. Since the trial court allowed the evidence to be admitted as prior bad acts evidence, the only conclusion that can be drawn is that the court considered the evidence that defendant "touched [a participant] inappropriately" to be of sexual nature. Moreover, the record belies the majority's conclusion that the trial court determined the evidence irrelevant because the stipulation did not include a specific allegation of sexual misconduct. Again, the trial court allowed the evidence to be admitted because it involved contact that "could be perceived as sexual behavior. *** So I am introducing that incident as other crimes evidence." The sole purpose of the stipulation was to serve as propensity evidence that defendant previously touched a young boy inappropriately. The only inference to be drawn from this evidence is the improper inference that, because defendant previously touched a young boy inappropriately, it is more likely than not that he committed the sexual acts alleged in this case. The State repeated this theory in its closing argument by describing the encounter as inappropriate behavior "[l]eveled upon children," adding, "there is a pattern here." In light of this context, the record affirmatively rebuts the majority's conclusion that the trial court determined the admitted stipulation was irrelevant simply because the stipulation only generally referenced inappropriate touching, rather than a specific sexual act.

¶ 123    My inquiry, however, does not end here. While I cannot presume that the improper evidence had no effect on the trial court's judgment convicting defendant of the charged offenses, the question still remains whether defendant is entitled to reversal of his convictions based on the trial court's erroneous admission of the improper evidence. Reversal based on such an error is required " 'only if the evidence was a material factor in the defendant's conviction such that, without the evidence, the verdict likely would have been different.' " *Supra* ¶ 87 (quoting *People v. Adkins*, 239 Ill. 2d 1, 23 (2010)); see *People v. Hall*, 194 Ill. 2d 305, 339 (2000); *People v. Nieves*, 193 Ill. 2d 513, 530 (2000); *People v. Cortes*, 181 Ill. 2d 249, 285 (1998); *People v. Placek*, 184 Ill. 2d 370, 385 (1998); *People v. Manning*, 182 Ill. 2d 193, 215 (1998).

¶ 124    Again, *Naylor* is directly on point. There, the "evidence boiled down to the testimony of the two police officers against that of defendant." *Naylor*, 229 Ill. 2d at 608. We found the evidence closely balanced, noting "no additional evidence was introduced to contradict or corroborate either version of events. Thus, credibility was the only basis upon which defendant's innocence or guilt could be decided." *Id.* (citing *People v. Agee*, 307 Ill. App. 3d 902, 906 (1999), and *People v. Gagliani*, 210 Ill. App. 3d 617, 627 (1991)). The instant case requires the same result.

¶ 125    I initially note that the State relied heavily on the improper evidence at trial to establish defendant engaged in a "pattern" of sexual misconduct that ultimately concluded with the charged acts against J.P. See *People v. Lindgren*, 79 Ill. 2d 129, 140 (1980) (explaining the highly prejudicial nature of prior bad acts evidence); *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991) (admission of highly prejudicial other-crimes evidence substantially outweighed its probative value, necessitating reversal); *Placek*, 184 Ill. 2d at 385 (reversing and remanding for a new trial in light of the trial court's admission of highly prejudicial other-crimes evidence); *Manning*, 182 Ill. 2d at 213-14 (reversing and remanding for a new trial where the highly prejudicial evidence of prior bad acts clearly outweighed its probative value). I also note that only two of the witnesses that testified at trial know what happened in defendant's bedroom: defendant and J.P. Without physical evidence, this case came down to a credibility contest between J.P. and defendant. The other bad acts evidence, which the trial court erroneously admitted for the purpose of showing defendant's propensity to commit inappropriate sexual contact, made it

easier to credit J.P.'s testimony rather than defendant's testimony because it suggested defendant had a propensity for molesting teenage boys. The error has even more significance in this case because the trial court did have issues with J.P.'s credibility. While it found J.P. credible with respect to two of the charges, it did not find him credible regarding the third charge and found defendant not guilty of count III. Given the trial court had some hesitation regarding J.P.'s credibility, I would hold that there is a reasonable probability defendant would have been acquitted absent the admission of the prior misconduct evidence. See *Lindgren*, 79 Ill. 2d at 140; *Placek*, 184 Ill. 2d at 385; *Manning*, 182 Ill. 2d at 213-14; *Naylor*, 229 Ill. 2d at 610.

¶ 126   In sum, the majority opinion not only violates the precedent set out in *Naylor*, but it also fails to appreciate the serious nature of the error that occurred in this case. Again, the erroneous admission of propensity evidence carries a high risk of prejudice. This court has not hesitated to reverse convictions based on this type of error. See, *e.g.*, *Lindgren*, 79 Ill. 2d 129 at 140; *Thingvold*, 145 Ill. 2d at 452; *Placek*, 184 Ill. 2d at 385; *Manning*, 182 Ill. 2d at 213-14; *Naylor*, 229 Ill. 2d at 610. The reason for this is simple: this type of evidence carries the risk that a trier of fact will convict a defendant merely because it believes the defendant is a bad person who deserves punishment. *Placek*, 184 Ill. 2d at 385. "The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime. And so, as a matter of policy, where the testimony has no value beyond that inference, it is excluded." *People v. Lehman*, 5 Ill. 2d 337, 342 (1955). As this court has previously explained, this type of error involves a "matter of the integrity of the [judicial] system." *Lindgren*, 79 Ill. 2d at 143. A defendant's right to a trial by an unbiased trier of fact is violated where the trier of fact based its decision "on extraneous matters." *Id.* "This is a substantial right normally afforded to guilty and innocent defendants alike. Collateral-crimes [or prior bad acts] evidence is likely to violate this right." *Id.* Defendant's prior misconduct—driving a young boy home and touching him on the buttocks—was erroneously admitted based on a propensity assumption that one who has committed prior acts of misconduct that are sexual in nature more likely than not committed the sex acts charged in the case he was on trial for. Given the highly prejudicial nature of the erroneously admitted propensity evidence, the record's rebuttal of the presumption that the trial court disregards inadmissible evidence, and the closeness of the other evidence at trial, I would affirm the judgment of the

appellate court, which reversed defendant's convictions and remanded for a new trial.

¶ 127        JUSTICE CUNNINGHAM joins in this dissent.